In the Matter of NEW YORK STATE LABOR RELATIONS BOARD, Petitioner, against MONTGOMERY WARD & COMPANY, INCORPORATED, Respondent.

In the Matter of MONTGOMERY WARD & COMPANY, INCORPORATED, Cross-Petitioner, against NEW YORK STATE LABOR RELATIONS BOARD, Cross-Respondent.*

Supreme Court, Special Term, Queens County, December 29, 1942.

* Affd. 266 App. Div. 878.

*Daniel Kornblum* for petitioner and cross-respondent.

*John A. Barr, Stuart S. Ball* and *Brooks Wynne* for respondent and cross-petitioner.

KADIEN, J. Petition by the New York State Labor Relations Board (hereinafter referred to as the " Board ") to enforce, pursuant to section 707, subdivision 1, of the Labor Law (Cons. Laws, ch. 31, as amended by L. 1937, ch. 443 [New York State Labor Relations Act]), and cross-petition by Montgomery Ward & Co., Incorporated (hereinafter referred to as " Wards ") to set aside, pursuant to section 707, subdivision 4, of the Labor Law, the final order issued by the Board and dated May 28, 1942.

Said order directs Wards to bargain collectively with the union which in a prior " representation " proceeding was duly certified as the exclusive representative of the unit comprising all of Wards' employees in its Jamaica, New York, department store except executive, supervisory, and confidential employees. Eight conferences were held between representatives of the union and Wards between June 9, 1941, and October 1, 1941, but the parties failed to reach a collective bargaining agreement. The record of what occurred consists principally of Board's Exhibit 5, which is a memorandum prepared by Wards' representative at the June 9th meeting as to what occurred at that meeting, and the testimony of J. M. Conlon, the local representative of the union, who testified as to what occurred at that meeting and the others which he thereafter attended. Upon the basis of this record the Board found that " at all times since May 6, 1941, Respondent has refused, and continues to refuse, to bargain collectively in good faith with the Union."

Wards does not contest the facts. It states on page 2 of its brief that " the facts as to what occurred are not substantially in dispute." Its quarrel is with the inferences which the Board drew from these facts. It urges that there is no substantial evidence to support the findings of the Board which, in reaching its decision, did not apply to the facts " a proper interpretation of the duty to bargain under the Act."

Recently the United States Supreme Court in *National Labor Relations Board* v. *Nevada Consolidated Copper Corporation* (316 U. S. 105) said: " The possibility of drawing either of two inconsistent inferences from the evidence did not prevent the Board from drawing one of them, as the court below seems to have thought.

" * * * if the findings of the Board are supported by evidence the courts are not free to set them aside, even though the Board could have drawn different inferences."

It is thus clear that if the findings of the Board are supported by evidence they are conclusive upon the reviewing court (Labor Law, § 707, subd. 2; *Matter of Stork Restaurant, Inc.* v. *Boland*, 282 N. Y. 256), even if the Board has drawn one of two inferences equally consistent with the facts found. The court can no more substitute its judgment for that of the Board in respect to inferences than it can in respect to facts. As said by the Supreme Court, " The inferences to be drawn were for the Board and not the courts." (*National Labor Relations Board* v. *Pennsylvania Greyhound Lines, Inc.* (303 U. S. 261, 271).

If willingness to confer with a union were the sole criterion for collective bargaining, there would be little doubt that Wards has bargained collectively in the instant case. It is conceded in the record that it was ever ready to confer with the union's representative. However, the record also discloses that its mind was made up from the beginning to the end of the negotiations not to accede in any respect to the basic proposals made by the union, such as closed or preferential shop, arbitration, seniority, and the like. Its attitude was to retain unilateral control of these matters in exactly the same degree as prevailed prior to the unionization of the unit. This point of view has been very frankly set forth in the cross-petition and in the comprehensive brief which has been submitted to the court. It is summarized in paragraph " 8 " of the cross-petition as follows: " * * * the law does not require an employer to make a concession from the *status quo* when it is not convinced that such a concession should be made, so long as it is willing to enter into an agreement with the union on the basis of the *status quo*."

The United States Supreme Court has said " The Act does not compel agreements between employers and employees. It does not compel any agreement whatever." (*National Labor Relations Board* v. *Jones & Laughlin Steel Corp.*, 301 U. S. 1, 45.)

" By necessary logic," contends Wards, " if the duty to bargain does not compel the making of agreements on a basis which is not satisfactory to the employer, it does not compel the making of concessions from the *status quo*." (Page 22 of brief.) Of course, an employer cannot be compelled to make or accept any particular provision. That does not mean, however, that he has fulfilled his affirmative duty to bargain collectively in all instances where all he has done is to explain the *status quo* and state that he will adhere to that and nothing else. (Wards'

attorneys put it this way on page 26 of the brief: "He [the employer] is under a duty to explain what the *status quo* is, but is not compelled to offer more, and he is presumed to offer that.")

To obviate the necessity for economic pressure and avoid industrial strife, the law has imposed the duty to bargain in good faith. (Labor Law, §§ 700, 704, subd. 6; *Metropolitan Life Ins. Co.* v. *New York State Labor Relations Board,* 280 N. Y. 194; *National Licorice Co.* v. *National Labor Relations Board,* 309 U. S. 350.) There is no hard and fast rule as to what constitutes bargaining in good faith. It is clear, however, that the very terms, "bargaining," "good faith," contemplate that the parties will approach the negotiations with an open and fair mind and with a sincere resolve to make an effort to arrive at an agreement. The basic question is whether the employer has negotiated in good faith. It has been held that the employer's insistence upon "the right to act unilaterally and of its own will alone upon matters involving legitimate collective bargaining denies the employees * * * opportunity to bargain collectively," and that such an employer thereby refuses to bargain collectively within the meaning of the Act. (*Singer Mfg. Co.* v. *National Labor Relations Board,* 119 F. 2d 131, 136; certiorari denied 313 U. S. 595.)

Recent decisions, moreover, have held that bargaining in good faith means exploring the subject with an eye to compromise rather than mere adherence to preconceived determinations. In *National Labor Relations Board* v. *George P. Pilling & Son Co.* (119 F. 2d 32) the court said, at page 37: "there must be common willingness among the parties to discuss freely and fully their respective claims and demands and, when these are opposed, to justify them on reason. When the proffered support fails to persuade or if, for any cause, resistance to the claim remains, it is then that *compromise* comes into play. But, agreement by way of compromise cannot be expected unless the one *rejecting* a claim or demand is willing to make *counter-suggestion or proposal.*" (Italics mine.) (See also *Rapid Roller Co.* v. *National Labor Relations Board,* 126 F. 2d 452, 459; certiorari denied 317 U. S. 650.)

The fact that in the instant case Wards recognized the exclusive status of the union and increased minimum wages and the mileage allowance of employees using automobiles is not determinative. It was bound to recognize the union which had been duly certified on May 15, 1941, as the chosen representative of its employees in the contested representation proceeding. As

for the increases, the union made its first wage proposals at the conference of July 9th. These Wards rejected, contending that it was already paying what it considered to be the competitive minima in the Jamaica area. Notwithstanding this, it announced at the conference of August 19th that it had put into effect an increase in minimum wages. It neither apprised the union nor afforded it an opportunity to bargain as to the extent of the increments. Thus, it made the union, which was the chosen representative of the employees and to which it was obliged to accord exclusive bargaining recognition, a stranger to its decision until after it was ready to go into effect, notwithstanding that negotiations were *then* in progress for the very purpose of entering into a collective bargaining agreement involving wages and conditions of employment. (See *Great Southern Trucking Co.* v. *National Labor Relations Board,* 127 F. 2d 180; certiorari denied 317 U. S. 652.) Such unilateral action on the part of Wards was properly considered by the Board on the issue of good faith.

It has been said that " Collective bargaining is an act; pretended collective bargaining is an omission to perform the act, and no unusual difficulty arises because, in determining whether bargaining within the meaning of the Act has indeed occurred, the trier of the facts must determine whether the acts proved were rendered in good faith or were merely in pretended good faith and performed with the actual intent to achieve the very opposite of collective bargaining. Existence or nonexistence of good faith, just as existence and nonexistence of intent, involve only inquiry as to fact." (*Singer Mfg. Co.* v. *National Labor Relations Board, supra,* at p. 134.) Such an inquiry has been made here and upon the undisputed record the Board found that Wards did not bargain collectively in good faith. Merely because good faith is not always provable by direct evidence does not authorize the court to substitute its judgment. A careful examination of the record upon which the decision of the Board is based discloses, in my opinion, substantial evidence to support it and, accordingly, the petition to enforce the order of May 28, 1942, is granted and the cross-petition to reject it is denied.

Proceed on notice.